Michael C. Ormsby
United States Attorney
Eastern District of Washington
Aine Ahmed
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> KEVIN M. ELLISON, ) <br> ) <br> Defendants ) <br> ) | CR-12-072-LRS <br><br> United States' Response to Defendant's Motion to Suppress |

Plaintiff, United States of America, by and through Michael C. Ormsby, United States Attorney for the Eastern District of Washington, and Aine Ahmed, Assistant United States Attorney for the Eastern District of Washington, respectfully submits the following response to the Defendant's motion for suppression.

*BACKGROUND FACTS:*

On June 14, 2012, at approximately 5:30 a.m., a fire was discovered at Big Trout Lodge Apartment complex, building #11, unit #256, located at 22809 E. Country Vista, Liberty Lake, Washington. The Big Trout Lodge Apartment complex is a commercial rental property, which is engaged in interstate commerce. According to the assistant manager, Scarlet Stalter, there are approximately 297 apartments in the complex and there are approximately 23 apartments in Building #11. Scarlet Stalter said that the Spokane Shock Football Team leased apartment #256 on or about March 1, 2012, and that the apartment was occupied by Kevin

United States' Response to Defendant's Motion to Suppress - 1
P20803JJ.AAA.Ellison.wpd

ELLISON, a member of the Spokane Shock Football Team.  Ms. Stalter also said the apartments are managed by Riverstone Residential Group a nationwide property management company.

On June 14, 2012, Spokane Valley Deputy Fire Marshal (DFM) Clifton Mehaffey became aware that a commercial fire had occurred at the Big Trout Lodge Apartment complex, in apartment #256.  DFM Mehaffey was informed that the tenant of the apartment, Kevin ELLISON, escaped the fire through the apartment window and was subsequently transported and treated at Deaconess Hospital.  According to medical records, the Defendant ELLISON arrived at the hospital at 06:41 in the morning.  The medical records indicate that the Defendant was given a Hydrocodone pill at 6:53 a.m. and then another Hydrocodone pill at 7:23 a.m.

According to DFM Mehaffey's report, he arrived at Deaconess Hospital at approximately 7:45 a.m.  *See Attachment A* (Report of DFM Mehaffey).  As Mehaffey approached ELLISON, he asked him whether the Defendant's name was Kevin ELLISON, and ELLISON responded that it was.  Mehaffey identified himself as a fire marshal, and Mehaffey was wearing a sidearm, badge, handcuffs which were clearly visible, and his law enforcement credentials around his neck. Mehaffey asked the Defendant whether he was okay, and the Defendant stated that he was feeling pretty good although he had inhaled some smoke.  Mehaffey sat down in a chair next to the bed, and asked the Defendant what had happened.  The Defendant stated he had been smoking a cigar, and that he placed the cigar against the blanket with his hand, and lit the bed on fire.  Mehaffey then asked the Defendant whether he had been asleep when this happened, and the Defendant replied that he had not, and that "God told me to do it."  The Defendant went on to say that he had heard his roommate banging on his door, and that he informed his roommate that everything was going to be okay and that God would make sure that nobody got hurt.  The Defendant stated that he would take responsibility for

United States' Response to Defendant's Motion to Suppress - 2
P20803JJ.AAA.Ellison.wpd

his actions, and acknowledged that he had committed a crime. Mehaffey informed the Defendant he was going to be charged with a crime, and the Defendant stated, "yeah..I know."

At that point, the General Manager of the Spokane Shock football team, Ryan Rigmaiden, entered the room. Mehaffey briefly spoke with Rigmaiden, and then stepped out of the room to telephone ATF Special Agent Lance Hart. Hart informed Mehaffey that he was on the way to the hospital, and requested that Mehaffey *Mirandize* the Defendant before he arrived. Mehaffey then went to his vehicle to retrieve a "rights warning" card, and upon his return to the Defendant's hospital room, read the Defendant his *Miranda* warnings, and had the Defendant sign the card, acknowledging that his rights had been read to him. *Attachment B*. After waiving his rights, the Defendant spoke about his prior drug use, specifically involving Vicodin pills, and his previous arrest and release from the San Diego Chargers. He again talked about the fire, acknowledging that he watched the fire burn before escaping out of a window, and reiterated that God had told him to do it. The Defendant was asked if he was on any drugs, and stated that he was not.

The Defendant then received a telephone call from a family member, and Mehaffey left the room so the Defendant could have his conversation in private. Mehaffey returned to the room as the Defendant was on the phone. The Defendant turned to Mehaffey while he was still on the phone, and asked Mehaffey whether he could get an attorney, and Mehaffey said he could. Mehaffey asked if he wanted to answer any questions, and the Defendant stated that he did not. When Agent Hart arrived at the Defendant's hospital room at approximately 8:30 a.m, the Defendant informed Hart that he had invoked his rights. Agent Hart informed the Defendant that was fine. The Defendant and Agent Hart then engaged in small talk concerning their respective religious faiths and about family members.

On June 14, 2012, SA Hart contacted Ryan Rigmaiden, the General Manager of the Spokane Shock Football Team at Deaconess Hospital. Rigmaiden

United States' Response to Defendant's Motion to Suppress - 3
P20803JJ.AAA.Ellison.wpd

said that while he was in the hospital with the Defendant, the Defendant had told him that he had set his bed on fire using a "blunt" because "GOD" had told him to do it.

On June 14, 2012, DFM Mehaffey interviewed David Tucker, a member of the Spokane Shock Football Team. Tucker is a roommate of ELLISON and that they both resided in unit #256 at Big Trout Lodge Apartments. According to Mehaffey, Tucker stated that he awoke to the sound of his smoke alarm and he attempted to contact ELLISON by knocking on his bedroom door. Tucker reported that ELLISON stated, "I'm good", but did not open the door. Tucker left the apartment and notified the other tenants of the fire.

*ARGUMENT:*

The Defendant was coherent during the entire interview. The two Hydrocodone pills that he took that morning, one of which was administered just minutes before he was interviewed, did not diminish the Defendant's ability to understand why a law enforcement officer was in his hospital room to speak with him. The Defendant was responsive to questioning and was very specific about his past, including providing details about a past arrest, down to the number of Vicodin pills he purchased from a drug dealer prior to his arrest in San Diego. The Defendant also provided details about the fire, and included the fact that his roommate was banging on his door during the fire. The Defendant was also coherent enough to speak with coaches and the General Manager, and family members. He was also cognitively alert and able enough to invoke his rights after consulting with family members. Mehaffey stepped out of the room while the Defendant engaged in these conversations, which supports the fact that the Defendant was not in custody at this time. Moreover, Mehaffey went to his vehicle to retrieve the rights warning card while the Defendant remained in the hospital room, further indicating that the Defendant was not in custody at that point. *See United States v. Martin*, 781 F.2d 671 (9th Cir. 1985)(questioning a

United States' Response to Defendant's Motion to Suppress - 4
P20803JJ.AAA.Ellison.wpd

suspect in the hospital did not rise to custody status because enforcement did not coordinate the Defendant's arrest with the extent of his hospitalization in order to avoid reading him Miranda warnings). *Id*. at 673.  The *Martin* court found that following:

> Fact that hospitalized defendant may have been in pain and was under influence of Demerol during questioning by police at hospital did not render his statements to police involuntary; defendant was awake and relatively coherent during questioning, had not received excessive quantities or unusual combinations of drugs, and had shown willingness to speak to police.

*Id*. at 671.

> The district court properly concluded that although the defendant was injured and under medical care at the time the statements were made, the type, dosage, and schedule of painkilling narcotic administered to [Martin] was not sufficient to overbear his will to resist the questioning or impair his rational faculties.

*Id.* at 673.

Voluntariness must be established by a preponderance of the evidence. *United States v. Kelly*, 953 F.2d 562, 564 (9th Cir. 1992).  The test for determining whether a confession is voluntary is "whether, considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." *Derrick v. Peterson*, 924 F.2d 813, 817 (9th Cir. 1990).  "Whether there has been a valid waiver depends on the totality of the circumstances, including the background, experience, and conduct of defendant." *United States v. Bernard S.*, 795 F.2d 749, 751 (9th Cir. 1986).   Here the Defendant initially gave a voluntary non-custodial statement.  After he was *Mirandized*, he again gave the same statement.  He also gave the same statement to the General Manager, Ryan Rigmaiden, who was never asked by any law enforcement officer to speak with the Defendant.  There is no indication that the Defendant's rational faculties were impaired, or that the narcotics administered to him overbore his will to resist the questioning.  *See United States v. Heller*, 551 F.3d 1108, 1113 (9th Cir.

2009)(ingestion of Tylenol III with codeine the morning of the interview did not make the Defendant's statement involuntary).

*CONCLUSION:*

For the aforementioned reasons, the Defendant's motion should be denied.

DATED August 3, 2012.

                Michael C. Ormsby
                United States Attorney

                *s/Aine Ahmed*

                Aine Ahmed
                Assistant United States Attorney

I hereby certify that on August 3, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following, and/or I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participant(s):

    Ms. Kimberly Deater
    Attorney at Law
    10 North Post Street, Suite 700
    Spokane, WA 99201

                *s/Aine Ahmed*

                Aine Ahmed
                Assistant United States Attorney